ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE
———————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
———————————

No. 12-3110
———————————

UNITED STATES OF AMERICA,                    Appellee,

v.

DUANE MCKINNEY,                               Appellant.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
———————————

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
VIRGINIA CHEATHAM
COLLEEN KENNEDY
* GILEAD I. LIGHT, D.C. Bar #980839
Assistant United States Attorneys

* Counsel for Oral Argument
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

Cr. No. 07-CR-113 (RBW)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are appellant, Duane McKinney, and appellee, the United States of America. There are no amici.

## Rulings Under Review

This is an appeal following remand from this Court ordering a finding as to whether or not appellant suffered from a severe mental illness during his trial in 2008 and was thus incompetent to represent himself. Appellant challenges the trial court's finding on remand that he was mentally competent to represent himself at trial. There is no published citation to this ruling.

## Related Cases

Appellee is unaware of any related cases.

## Statutes and Regulations

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the attached Addendum.

# TABLE OF CONTENTS

PAGE

COUNTERSTATEMENT OF THE CASE ............................................ 1

    The District Court Trial Proceedings in 2008 ..................... 4

    Proceedings Following Remand ....................................... 13

    The Trial Court Findings ............................................... 17

SUMMARY OF ARGUMENT ..................................................... 18

ARGUMENT ...................................................................... 20

    I.   The District Court's Properly Found That Appellant Was Competent to Represent Himself At Trial ................................ 20

        A.  Standard of Review .................................................. 20

        B.  Appellant Bears The Burden of Proof at his Competency Hearing ......................................... 21

        C.  Applicable Legal Principles .................................. 26

        D.  Discussion ........................................................ 28

            1.  The Trial Court's Competency Determination On Remand Was Not Clearly Erroneous Because Overwhelming Evidence Supported the Finding. ....... 29

            *2.*  Appellant Erroneously Claims That The Trial Court Failed To Address *Edwards* ............................... 35

            3.  Appellant Cannot Demonstrate Clear Error by Relying on Uncorroborated Statements and Evidence That Was Not Before the Trial Court ......... 37

            4.  Appellant's courtroom performance did not render his trial unfair ................................... 42

iii

II.   Appellant Was Not Denied Due Process as a Result of His
      Post-Remand Competency Hearing ......................................... 45

CONCLUSION ................................................................................. 50

# TABLE OF AUTHORITIES*

**Page**

*Blunt v. United States*, 389 F. 2d 545 (D.C. Cir. 1967).............................. 48

\* *Cooper v. Oklahoma*, 517 U.S. 348 (1996)................................................ 22

*Cremeans v. Chapleau*, 62 F. 3d 167 (6th Cir. 1995) ............................... 46

*Dusky v. United States,* 362 U.S. 402 (1960)............................................ 48

\* *Faretta v. California*, 422 U.S. 806 (1975) ....................................26-27, 43

*Godinez v. Moran*, 509 U.S. 389 (1993) .................................................... 26

\* *Goland v. Central Intelligence Agency*, 607 F. 2d 339
     (D.C. Cir. 1978)................................................................................... 39

*Heard v. United States*, 390 F.2d 866 (D.C. Cir. 1968)............................. 48

\* *Indiana v. Edwards*, 554 U.S. 164
     128 S. Ct. 2379 (2008) ......3-4, 11-13, 18, 20-21, 26-28, 35-36, 42-44

*Maynard v. Boone*, 468 F. 3d 665 (10th Cir. 2006) .................................. 46

*McGregor v. Gibson,* 248 F. 3d 946 (10th Cir. 2001)........................... 23-24

*Medina v. California,* 505 U.S. 437 (1992) ......................................... 22, 24

*Odle v. Woodford*, 238 F. 3d 1084 (9th Cir. 2001).................................... 46

*Pate v. Robinson*, 383 U.S. 375 (1966) ..................................................... 48

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Thompson v. Keohane*, 516 U.S. 99 (1995) ............................................. 46

\*   *United States v. Battle,* 613 F.3d 258 (D.C. Cir. 2010) .................... 20, 33

\*   *United States v. Bernard,* 708 F. 3d 583 (4th Cir. 2013) ........ 21, 28, 43-44

*United States v. Caldwell,* 543 F. 2d 1333 (D.C. Cir. 1974) ............ 34, 41

*United States v. David*, 511 F.2d 355 (D.C. Cir. 1975) .......................... 48

*United States v. Ecker*, 543 F. 2d 178 (D.C. Cir. 1976)........................... 40

*United States v. Ellerbe*, 372 F. 3d 462 (D.C. Cir. 2004) ........................ 26

*United States v. Ferguson*, 560 F.3d 1060 (9th Cir. 2009)................ 12-13

United States v. Frank, 956 F. 2d 872 (9th Cir. 1991) ........................... 24

United States v. Hutson, 821 F. 2d 1015 (5th Cir. 1987); ...................... 24

*United States v. Izquierdo*, 448 F. 3d 1269 (11th Cir. 2006)................... 23

*United States v. Jones,* 642 F. 3d 1151 (D.C. Cir. 2011)........................ 33

*United States v. Lloyd*, 247 F. 2d 522 (D.C. Cir. 1957)..................... 24-25

*United States v. Mason*, 52 F. 3d 1286 (4th Cir. 1995) .......................... 46

\*   *United States v. McKinney*, 373 Fed. Appx. 74
     (D.C. Cir. 2010)................................................................ 20, 34, 42

*United States v. Nichols*, 56 F. 3d 403 (2nd Cir. 1995) ........................... 24

*United States v. Robinson*, 404 F. 3d 850 (4th Cir. 2005)........................ 23

*United States v. Rudisill*, 43 F. Supp. 2d. 1 (D.D.C. 1999).................... 22

United States v. Teague, 956 F. 2d 1427 (7th Cir. 1992) ....................... 24

*United States v. Thompson*, 587 F.3d 1165 (9th Cir. 2009) ..............21, 27

*United States v. Turner*, 818 F. Supp. 2d. 207 (D.D.C. 2011).................22

United States v. Valasquez, 885 F. 2d 1076 (3rd Cir. 1989) .................24

\*   *United States v. VanHoesen*, 450 Fed. Appx. 57 (2nd Cir. 2011)............43

*United States v. Whittington*, 586 F. 3d 613 (8th Cir. 2009) ..................22

\*   *Wheat v. Thigpen*, 793 F. 2d 621 (5th Cir. 1986).....................................45

*Wilkins v. Bowersox*, 145 F. 3d 1006 (8th Cir. 1998) ............................46

## OTHER REFERENCES

D.C. Code § 22-3211(b)(2)............................................................................1

D.C. Code § 22-3212(a) ............................................................................1-2

18 U.S.C. § 2 ................................................................................................1

18 U.S.C. § 371 ............................................................................................1

18 U.S.C. § 1341 ..........................................................................................1

18 U.S.C. § 1343 ..........................................................................................1

18 U.S.C. § 1957...........................................................................................1

18 U.S.C. § 4241.....................................................................................22, 23

18 U.S.C. § 4241(a) ....................................................................................22

28 U.S.C. 2255 ...........................................................................................25

# ISSUES PRESENTED

I.     Whether the district court erred in its finding after remand that appellant did not suffer from a severe mental illness and was thus competent to represent himself at trial, where multiple medical experts, both at the time of trial and afterward, reached the conclusion that appellant was competent to represent himself, and where the district court's finding, relying on these expert opinions and its own observations of appellant, was fully supported by the evidence and not clearly erroneous.

II.     Whether a finding of appellant's competency to represent himself more than four years after trial violates the Due Process clause, when the finding was based primarily on evaluations of appellant made at the time of trial, as well as the trial court's first-hand observations of appellant during trial.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 12-3110

———————————————

UNITED STATES OF AMERICA,                          Appellee,

v.

DUANE MCKINNEY,                          Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————

BRIEF FOR APPELLEE

———————————————

## COUNTERSTATEMENT OF THE CASE

On July 6, 2007, appellant was charged by superseding indictment
with conspiracy, in violation of 18 U.S.C. §§ 2 and 371; four counts of
mail fraud, in violation of 18 U.S.C. §§ 2 and 1341; two counts of wire
fraud, in violation of 18 U.S.C. §§ 2 and 1343; three counts of unlawful
monetary transactions, in violation of 18 U.S.C. §§ 2 and 1957; and four
counts of first-degree theft, in violation of D.C. Code §§ 22-3211(b)(2)

and 22-3212(a) (App. I 93)[1]. On January 22, 2008, at the start of appellant's jury trial and immediately following the government's opening statement, appellant moved to represent himself at trial (App. I 252-273). The Honorable Reggie B. Walton, after an extensive colloquy with appellant, granted the motion and ordered defense counsel to remain available as standby counsel (*id*. at 272-273).

On January 28, 2008, after three days of trial and the conclusion of most of the government's evidence, appellant made an oral motion for a mental competency exam, claiming that his mental disease precluded his continued self-representation (1/28/08 Tr. 2-3). After an overnight screening proved inconclusive, the trial court ordered a full competency examination and continued the trial until April 3, 2008 (App. I 333). After multiple mental examinations, appellant reiterated his desire to proceed pro se and the trial court again permitted appellant to exercise his right to self-representation on April 2, 2008 (App. I 407-408). Trial resumed, and on April 17, 2008, the jury found appellant guilty with

---

[1] "App. I" refers to the Joint Appendix filed in the first appeal, Record No. 09-3004. "App. II" refers to the Joint Appendix filed in the instant appeal, Record No. 12-3110. "[MM/DD/YR] Tr. [Page]" refers to the transcript of proceedings before the Honorable Reggie B. Walton.

respect to eleven of the fourteen counts charged in the indictment but acquitted him of conspiracy, one count of engaging in an unlawful monetary transaction, and one count of first degree theft (4/17/08 Tr. 3-5).

On July 1, 2008, defendant filed a motion for a new trial, claiming the trial court should not have permitted him to represent himself in light of the Supreme Court's intervening decision in *Indiana v. Edwards*, 554 U.S. 164 (2008). The trial court orally denied the motion after a hearing on November 14, 2008 (App. I 505). On January 8, 2009, the trial court sentenced appellant to terms of 150 months' incarceration for each of the six counts of mail and wire fraud on which he was convicted, 120 months' incarceration for each of the two counts of unlawful monetary transactions on which he was convicted, and 60 months' incarceration for each of the three counts of first-degree theft on which he was convicted, all terms of incarceration to run concurrently (App. I 509); and concurrent terms of three years' supervised release on all counts. The court also ordered appellant to pay restitution in the amount of $912,630.75 (App. I 512).

Appellant appealed. After briefing and oral argument, this Court ruled on March 5, 2010, *inter alia*, that it was "unclear whether the District Court meant to hold that appellant did not have a 'severe mental illness' and therefore failed to satisfy the *Edwards* threshold" (App. II 147). This Court remanded to the trial court with instructions to "determine with clarity whether [appellant] lacked the mental capacity to represent himself at trial" (App. II 146).

On October 12, 2012, Judge Walton presided over a hearing to address that issue. On November 30, 2012, the parties filed additional briefs on the issue of appellant's capacity to represent himself (App. II 137, 150). On December 14, 2012, Judge Walton ruled that appellant "did not suffer from a severe mental illness" during his trial in 2008 and was competent to represent himself (App. II 185, 188). Appellant filed a timely notice of appeal (App. II 187).

## The District Court Trial Proceedings in 2008

Between his May 2, 2007, arrest and the start of his jury trial on January 22, 2008, appellant was represented by a series of five

attorneys – four of them appointed by the court.[2] When it came time for the defense's opening statement on the first day of trial, however, appellant moved to proceed pro se (App. I 252).

After excusing the jury, Judge Walton conferred with appellant and unequivocally advised him against representing himself, noting that to do so would be "fool[ish]" (App. I 253), a "bad decision" (*id.* at 273), and "digging [himself] a grave" (*id.* at 260). Judge Walton reviewed the potential adverse consequences of self-representation with appellant, thoroughly discussing the specifics of the case against him, the potential sentences, potential defenses and the fact that appellant could not expect assistance from the court in complying with the rules of court (*id.* at 252-273). Nevertheless, appellant insisted on proceeding as his own attorney (*id.* at 273). The district court granted appellant's motion to proceed pro se and appointed appellant's defense counsel to serve as appellant's legal advisor and standby counsel (*id.* at 272-273).

---

[2] Appellant was accused of having forged and fraudulently recorded deeds purporting to convey real property from the owners of record (most of whom were already deceased) to himself, seeking to mortgage some of those properties, and selling nine of them to unsuspecting buyers for a total gain of more than $770,000 (App. I 93).

On January 28, 2008, after most of the government's witnesses had testified, appellant for the first time asserted that he suffered from a "mental disease, which caused [him] to be unable to defend [him]self" (App. I 298-299). As appellant stated,

> I, Duane McKinney, stand before this honorable court, confessing that I suffer from mental disease, which caused me to be unable to defend myself.
>
> I do not understand the nature of these charges and the consequences of these proceedings against me. It is clearly and most evident that I am mentally incompetent. (App. I 299.)

Specifically, appellant claimed to suffer from "bi-polar disorder and chronic anxiety and insomnia," for which he took medication that induced "tiredness [] and . . . memory loss" (*id.*).

Appellant claimed to have alerted his standby counsel to this disability (App. I 300-301). Standby counsel told the court that appellant had resisted raising his competency as an issue because it would require his being transferred for evaluation, extending his pretrial detention (App. I 301-302). The standby counsel stated that he personally believed appellant was competent to proceed, that appellant's situation arose from appellant's "refus[al] to listen to

6

anyone," and that this refusal was not "the result of mental illness [but] just his personality" (App. I 303-304).

The district court agreed with the assessment of standby counsel and expressed suspicion that the late-breaking claim of incompetence was a strategic gambit (App. I 305). According to the trial judge, after a particular witness "slammed" appellant, appellant saw how strong the government's case was and realized his case was a "losing cause" (*id.*). The trial judge further expressed his belief that when appellant saw he was "going down," he decided to "throw this up at the last minute to try and circumvent this process" (*id.*). The district court nevertheless arranged for appellant to be initially screened by a forensic psychologist at the D.C. Superior Court the next morning (App. I 307). The outcome of that screening by Dr. Richard Benedetti was inconclusive, but Dr. Benedetti noted that appellant "might have been exaggerating or malingering cognitive deficits" (App. I 360). In his report to the district court, Dr. Benedetti recommended further evaluation (App. I 320).

After a hearing on the matter the next day, the trial court ordered appellant transferred to the Federal Correctional Institution ("FCI") at Butner, North Carolina, for a 30-day evaluation and continued the trial

until April 3, 2008 (App. I 332-334). The district court specifically requested the FCI staff to evaluate "whether [appellant] was mentally competent to waive his right to counsel and conduct his own defense" (App. I 357).

Dr. Tanya Cunic, a forensic psychologist at Butner FCI, examined appellant and prepared a report for the district court. In that report, dated March 4, 2008, Dr. Cunic described her observations of appellant as well as her review of other materials (including interviews with counsel and review of trial transcripts to date) and concluded that appellant met "the provisional diagnostic criteria for Antisocial Personality Disorder" (App. I 364). Dr. Cunic further opined that appellant was "not suffering from a severe mental disease or defect," "appear[ed] competent to proceed," and was anticipated to "remain competent for the foreseeable future" (App. I 366). In response to the court's specific inquiry about appellant's capacity to waive counsel and proceed pro se, Dr. Cunic advised that the court transcripts "d[id] not reflect an individual who was acting in a manner consistent with a mental disease or defect" and that "there [wa]s no evidence that . . .

[appellant] did not understand the potential limitations of him acting as his own attorney" (App. I 366).

At the March 13, 2008, hearing on appellant's mental competency, appellant requested the opportunity to consult with another psychiatrist (App. I 351). The district court granted appellant's request and permitted a second evaluation. On April 2, 2008, appellant (through his reinstated trial counsel) introduced the report of a psychiatric evaluation by Dr. Ronald Koshes (App. I 369). Dr. Koshes reported that he had been unable to examine appellant directly, because appellant had refused to speak with Dr. Koshes when they met (App. I 413). Dr. Koshes concluded, based on other sources and appellant's hostile and agitated demeanor, that appellant "appear[ed] to be suffering from a mental illness" and that the illness "was most likely Bipolar Disorder" and not "Antisocial Personality Disorder" as diagnosed by Dr. Cunic (App. I 415-16). Dr. Koshes nevertheless concurred with Dr. Cunic's conclusion that appellant was "competent" (App. I 416) and, more specifically, "competent enough to engage in his Court proceedings" (App. I 415).

At the April 2, 2008, hearing, appellant admitted that he had refused to speak with Dr. Koshes (App. I 385 ("Why should I talk to him?")) and reiterated his intention to proceed pro se (App. I 374, 407). Appellant's counsel conceded that appellant was "competent enough to sink himself" (App. I 404). The district court, though lacking confidence that appellant would "be able to effectively represent himself" (App. I 401) and concerned that appellant was "sending [him]self to prison" (App. I 408), permitted appellant again to exercise his Sixth Amendment right to self-representation. During the remainder of the trial, however, the district court permitted appellant's standby counsel to stand in as trial counsel at appellant's request (App. I 430). As a result, standby counsel argued for favorable jury instructions (04/11/08 Tr. 35-38) and gave the closing argument for the defense (04/14/08 Tr. 92-114). The jury rendered its verdicts on April 17, 2008 (4/17/08 Tr. 3-5).

On July 1, 2008, appellant, through counsel, moved for reconsideration of the district court's decision to permit appellant to proceed pro se (App. I 432). The motion acknowledged that appellant had been found competent by both the government's expert and his

own, but contended that the district court should have precluded appellant's self-representation, pursuant to the Supreme Court's post-trial decision in *Indiana v. Edwards*, 128 S. Ct. 2379, 2388 (2008). According to appellant, his performance was so poor as to undermine the fairness of his trial (App. I 436).

The district court denied the motion to reconsider after a November 14, 2008, hearing (App. I 505). The court acknowledged that "there were things that appellant did during the course of the trial that clearly adversely impacted his cause" (App. I 502-03). Judge Walton stated that it was "difficult" to determine the extent of appellant's mental health issues in light of his refusal to cooperate with evaluations, and that he was "not sure" if appellant's mental health issue had something to do with appellant's "horrible" job of representing himself (*id.*). He further concluded that the government's evidence was "just so overwhelming" that it was "absolutely certain that the result [of a new trial] would end up being the same" (*id.* at 503). As a result, the district court held, appellant could not satisfy the "heavy burden that he ha[d] to meet in order to justify receiving a new trial" (*id.* at 505).

11

On appeal of the denial of appellant's motion, this Court found that it was "unclear whether the District Court relied on the expert's opinion to support a conclusion that appellant did not suffer from severe mental illness or whether the court merely meant to say that it could not determine whether that was so" (App. II 147). This was so despite the fact that the trial court had "considered the opinion of an expert forensic psychologist at the Federal Correctional Institution ("FCI") in Butner, North Carolina, who concluded that appellant did not suffer from a severe mental disease or defect and that he was competent to conduct his own defense." *Id.* This Court noted that the trial court was now "in a position to make a 'fine-tuned mental capacity decision [], tailored to the individualized circumstances of [this] particular defendant." (App. II 148, *citing Edwards v. Indiana,* 128 S. Ct. at 2387.) As this Court stated:

> The District Court has before it the reports of two mental health professionals, the forensic psychologist at Butner and the psychiatrist who attempted to evaluate the defendant, as well as its own observations of defendant's behavior before and during trial. On remand, the District Court may – but is not required to – take additional evidence or allow briefing on the defendant's state of mind at the relevant time. See *United States v. Ferguson*, 560 F.3d 1060, 1070 (9th Cir. 2009). If the court determines that the defendant had a severe mental illness at the time he

represented himself at trial, the District Court should exercise its discretion to determine whether to grant appellant's motion for a new trial. See *Edwards*, 128 S. Ct. at 2388. If the court would not have altered its decision to grant McKinney's motion, the conviction and sentence will stand. See *Ferguson*, 560 F.3d at 1070. (App. II 148.)

## Proceedings Following Remand

On March 17, 2011, Dr. Kwanna Williamson completed her evaluation of appellant at the FMC in Butner. Dr. Williamson found that appellant was currently not suffering from a severe mental illness or defect rendering him unable to appreciate the nature and consequences of his criminal proceedings (App. II 226). Dr. Williamson also found that appellant seemed "invested in gamesmanship and appeared unmotivated for testing" (*id*.). Though "offended when asked to define basic legal terminology due to his prior legal involvement," appellant "demonstrated a clear understanding of terms despite disagreement with the legal process" (*id*.). Dr. Williamson further found that appellant did not meet the diagnostic criteria for an Axis-I disorder, including Bipolar Disorder as suggested by Dr. Koshes in 2008 (*id*.). There was no evidence of cognitive impairment, and no evidence of "delusional ideation about the relationship with courtroom personnel"

(App. II 227). Dr. Williamson concluded that appellant was competent to proceed (*id.*).

The court held a competency hearing on October 12, 2012, and heard the testimony of one witness, Dr. Carlton Trent Pyant, who had supervised Dr. Williamson's evaluation. A forensic psychologist for the Federal Bureau of Prisons, Dr. Pyant worked at the FMC in Butner (App. II 65). Dr. Pyant was admitted as an expert in the diagnosis and treatment of mental illness without objection (App. II 91).

After supervising Dr. Williamson's March 2011 evaluation of appellant for his general competence to participate in legal proceedings, Dr. Pyant completed another evaluation of appellant on December 9, 2011, specifically evaluating whether appellant, in 2008, was competent to waive his right to counsel and to represent himself at trial (App. II 65-66). Dr. Pyant noted that the two different evaluations were similar in that they tried to ascertain whether or not appellant suffered from a mental disease (App. II 67). Dr. Pyant's evaluation delved more specifically into whether appellant understood what was going on at the time of the 2008 proceedings (*id.*).

Appellant met with Dr. Pyant four times over four months, and Dr. Pyant attempted to meet with him at other times but appellant declined (App. II 92). Appellant was "somewhat cooperative" and answered questions but was restricted in his communication and did not elaborate on his answers (*id*.). Dr. Pyant stated that appellant was "upset that he was asked to come back for another evaluation," and that he didn't want to be honest or forthright (*id*. at 93). If appellant had a bi-polar disorder – a diagnosis appellant claimed one of his prior doctors had made – Dr. Pyant believed the symptoms would have manifested themselves during eight total months at Butner (*id*. at 94). Overall, Dr. Pyant did not find anything to counter the conclusions reached by earlier evaluators – specifically, that appellant did not suffer from a severe disease or mental illness, and was competent to waive his right to trial and to represent himself during his trial (*id*. at 96).

Dr. Pyant further opined that a diagnosis of a personality disorder would not have affected whether appellant was competent to waive counsel or to represent himself (App. II 99). A personality disorder was a "characterological" disorder that did not indicate someone was suffering from psychosis, delusions, bipolar disorder, or schizophrenic

15

disorder (*id*. at 100). In evaluating appellant, Dr. Pyant stated that appellant refused to submit to psychological testing because he was "not interested or vested in participating in the evaluation process," and Dr. Pyant believed this was because he did not want to be found competent in 2008 (*id*. at 104). Appellant knew what was at stake, he knew the purpose of the exam, and was hoping to be found incompetent when he met with Dr. Pyant (*id*. at 103-104). Furthermore, appellant was a "very articulate individual" who functioned very well at Butner and exhibited overall behavior more consistent with a personality disorder rather than a major mental illness (*id*. at 106-110).

In addition to meeting with appellant, Dr. Pyant reviewed trial transcripts for evidence of a mood disorder and found none (App. II 113). The trial likely would have been stopped if appellant had bipolar disorder, according to Dr. Pyant, because the symptoms (manic behavior, rapid and pressured speech, inability to stop talking) would have interfered with the trial (*id*.). Similarly, Dr. Pyant found no evidence of a psychotic or delusional disorder in the transcripts, and no evidence to suggest that appellant could not understand what was being asked or that he could not respond appropriately (*id*. at 114). Dr. Pyant

also reviewed the earlier evaluations performed by Drs. Cunic and Williamson, and transcripts from the beginning of appellant's trial until the initial continuance in January 2008 (*id*. at 67-68).

In response to questions from appellant's counsel, Dr. Pyant testified that he did not review transcripts from when the trial resumed in April 2008, interview family members, read appellant's Pretrial Services Report, or gather other past history on appellant (App. II 68-71). Dr. Pyant stated that, despite not having consulted the sources suggested by defense counsel, he had the information he needed to answer this Court's question, and sufficient information to render an opinion on appellant's mental competency in 2008 (*id*. at 70, 121).

## The Trial Court Findings

On December 12, 2012, Judge Walton determined that appellant did not suffer from a "severe mental illness" during his trial in 2008 (App. II 185). Instead, appellant had likely suffered from a personality disorder, which led him to believe that he could do a better job than a lawyer would and led to his decision to represent himself (*id*.). Judge Walton stated that his concern about appellant's ability to represent himself in 2008 had been primarily based on his view that appellant did

17

not understand the law or have the necessary knowledge to represent himself effectively (*id.*). Yet the *Edwards* case did not hold that either appellant's lack of intellectual capacity to appropriately self-represent, or his subsequent poor performance as an advocate, was a basis for concluding that appellant lacked mental competence to self-represent (*id.* at 185). What was most telling about appellant's true mental capacity was his eventual appreciation of his inability to effectively act as his own lawyer, when he decided at the end of trial to allow standby counsel to make his closing argument (*id.*). Accordingly, the trial court denied appellant's motion (*id.* at 186, 188).

## Summary of Argument

Appellant argues that the district court erred in finding him competent to represent himself at trial. Appellant first alleges that the government had the burden to prove his competence, and failed to meet it. This claim lacks merit. While this Court has not determined where the burden of proof lies in competency hearings, the weight of authority assigns it to the government under these circumstances. Nevertheless, even if the government had the burden, it carried that burden and proved appellant's competency here.

18

Appellant also asserts that the trial court failed to address the proper issue on remand, and that the court's competency determination was clearly erroneous due to its reliance on faulty methodology and deficient evaluations. But the court did address the proper issue, and appellant cannot demonstrate a clearly erroneous finding by relying on evidence and arguments that are not part of the record on appeal and would not, in any event, have altered the trial court's findings, which had substantial support in the record.

Appellant claims that his own deficient and irrational performance at trial deprived him of his right to a fair trial. However, appellant also cannot demonstrate under applicable law that he was denied constitutional rights by his own deficient performance as pro se counsel.

Finally, appellant claims that due process requires a new trial because the retrospective competency determination was of questionable validity, but such retrospective findings are deemed proper when, as is the case here, there is sufficient contemporaneous evidence of competency at the time in question.

19

## ARGUMENT

## I.    The District Court's Properly Found That Appellant Was Competent to Represent Himself At Trial

### A.    Standard of Review.

While the ultimate decision to limit a defendant's constitutional right to self-representation is within the discretion of the trial court, this Court instructed in its remand order that the trial court must first make a factual determination as to whether a defendant "suffer[s] from severe mental illness to the point where [he is] not competent to conduct trial proceedings by [himself]" (App. II 147)[3] (*citing Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 2388 (2008)). As the sole issue on remand is resolving the factual question of whether or not the defendant had a severe mental illness at the time he represented himself at trial, (App. II 147), this Court should uphold the district court's competency determination "unless it is clearly arbitrary or erroneous." *United States v. Battle,* 613 F.3d 258, 262 (D.C. Cir. 2010)

---

[3] *United States v. McKinney*, 373 Fed. Appx. 74, 75 (D.C. Cir. 2010)

(citations omitted).[4] In light of the Supreme Court's holding in *Edwards* that the trial judge is best positioned to make competency determinations, other courts have noted that the trial judge's competency findings, based on a defendant's behavioral history, medical opinions, and first-hand interactions with the defendant, should be afforded "wide latitude" and considerable deference on appeal. *United States v. Bernard,* 708 F. 3d 583, 593 (4th Cir. 2013) (*citing Edwards,* 554 U.S. at 177).

## B.     Appellant Bears The Burden of Proof at his Competency Hearing

Appellant, as the party who made a mid-trial motion for a competency hearing based on his own professed "mental disease," should bear the burden of proving his own incompetence to represent himself at trial. This Court has not addressed who bears the burden of proof in a federal competency hearing. As explained more fully below, the Fourth, Eighth, and Tenth Circuits have placed this burden on the

---

[4] Appellant claims the Ninth Circuit has "assumed an abuse of discretion standard" in challenges under *Edwards* (Appellant's Brief at 17), but the Ninth Circuit still reviews the underlying factual findings regarding competency for clear error. *United States v. Thompson,* 587 F.3d 1165, 1170-1171 (9th Cir. 2009).

21

defendant, the Eleventh Circuit has placed this burden on the moving party, and the Third, Fifth, Seventh and Ninth Circuits place the burden on the government.[5]

The Supreme Court has suggested, in *dicta*, that the burden of establishing incompetence in a federal prosecution rests with the defendant. *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.")[6] Thus, the Eighth Circuit has held that this guidance "support[s] the government's position that the burden is on the defendant to prove incompetence" and has allocated the burden accordingly. *United States v. Whittington*, 586 F. 3d 613, 618 (8th Cir. 2009). The Fourth Circuit has similarly interpreted the federal competency statute, 18 U.S.C. § 4241,[7] to place

---

[5] Two District Court decisions in this jurisdiction have held that the burden lies with the defendant. See *United States v. Turner*, 818 F. Supp. 2d. 207, 212 (D.D.C. 2011), *United States v. Rudisill*, 43 F. Supp. 2d. 1, 3 (D.D.C. 1999), (both citing Cooper v. Oklahoma, infra.)

[6] *See also Medina v. California,* 505 U.S. 437, 452 (1992) (allocating the burden of proof to defendant does not offend due process.)

[7] 18 U.S.C. § 4241(a) reads in pertinent part: "At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of

(continued . . . )

the burden on a defendant to show, by a preponderance of the evidence, that "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *United States v. Robinson*, 404 F. 3d 850, 856 (4th Cir. 2005); 18 U.S.C. § 4241. The Eleventh Circuit has uniquely held that the same statute arguably contemplates that the burden will lie with the party making the motion to determine competency, and that circuit allocates the burden accordingly. *United States v. Izquierdo*, 448 F. 3d 1269, 1277 (11th Cir. 2006). Finally, the Tenth Circuit, placing the burden on the defendant, makes a distinction between "procedural" competency claims, such as where a defendant argues against the denial of a competency hearing, or a "substantive" claim, where a defendant alleges that he was tried and convicted while incompetent. *McGregor v. Gibson,* 248 F. 3d 946,

---

(. . . continued)

probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant."

952 (10th Cir. 2001). With regard to substantive competency claims, the Tenth Circuit stated that the defendant is held to an even higher burden of proof than someone raising a procedural claim. *Id.*

The Second Circuit has declined to even address the burden of proof issue except for the rare case where the evidence for both positions is equally strong. *United States v. Nichols*, 56 F. 3d 403, 410 (2nd Cir. 1995) (quoting *Medina v. California*, 505 U.S. 437, 449 (1992) ("[t]he allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent.")[8]

*United States v. Lloyd*, 247 F. 2d 522 (D.C. Cir. 1957), cited by appellant for the proposition that the burden in this Circuit is on the government in the case of a remand (Appellant's Brief at 18), is

---

[8] Appellant cites *United States v. Valasquez*, 885 F. 2d 1076, 1089 (3rd Cir. 1989); *United States v. Hutson*, 821 F. 2d 1015, 1018 (5th Cir. 1987); *United States v. Teague*, 956 F. 2d 1427, 1431 n. 10 (7th Cir. 1992); and *United States v. Frank*, 956 F. 2d 872, 875 (9th Cir. 1991), all of which assign the burden of proving a defendant's competence to the government once the issue of competence has been raised in the trial court (Appellant's Brief at 17).

distinguishable from the instant matter because in *Lloyd*, the defendant was refused a competency hearing by the District Court. This Court, in remanding for both a competency hearing and a habeas corpus proceeding under 28 U.S.C. 2255, specifically conditioned its assignment of the burden of proof to the government on the district court's error. *Id*. at 523. In fact, this Court suggested that in ordinary circumstances, the government would *not* bear the burden of proof, but due to the trial court's error, it must "now bear" the burden. *Id.* ("in view of the error of the District Court in failing to order a mental examination made at the time of the original motion, the Government must *now bear* the burden of proof") (emphasis added). Unlike in *Lloyd*, the trial court below ordered multiple competency examinations upon appellant's mid-trial motion.

In any event, as discussed below, this is not a situation where the evidence is in equipoise. Regardless of where the burden of proof is allocated, the government proved, by a preponderance of the evidence, that appellant was competent to represent himself at trial.

25

## C.    Applicable Legal Principles

A criminal defendant has a constitutional right to self-representation. *United States v. Ellerbe*, 372 F. 3d 462, 466 (D.C. Cir. 2004). As the Supreme Court explained in *Faretta v. California*, 422 U.S. 806 (1975): "[t]he Sixth Amendment right to the assistance of counsel implicitly embodies a correlative right to dispense with a lawyer's help so that an accused, in the exercise of a free and intelligent choice, and with the considered approval by the court, may waive trial by jury, and so likewise may he competently and intelligently waive his constitutional right to assistance of counsel." *Id.* at 819 (internal quotations omitted). The Supreme Court has held that the standard for mental competence to waive counsel is the same standard as is required to stand trial or plead guilty. *Godinez v. Moran*, 509 U.S. 389, 398-399 (1993). Thus, as this Court has explained, "a defendant who is competent to stand trial is [necessarily] competent to waive his right to assistance of counsel" at trial. *Ellerbe*, 372 F.3d at 466.

In regard to the specific competency to represent oneself at trial, the Supreme Court's holding in *Indiana v. Edwards*, 554 U.S. 164 (2008), has allowed that "severe mental illness" may permit a court to

26

override a defendant's right to self-representation where that illness renders him incompetent to defend himself. *Edwards*, 554 U.S. at 178 ("the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.").[9] The Supreme Court specifically declined to adopt a specific federal standard to measure a criminal defendant's competency to conduct a trial. *Id.* ("[w]e need not now, and we do not, adopt" petitioner's formulation of a competency standard); *United States v. Thompson*, 587 F. 3d 1165, 1172 (9th Cir. 2009) ("*Edwards* did not adopt a specific standard"). Instead, as this Court has noted, "the Court left it to the discretion of the trial judge, who 'will often prove best able to make more fine-tuned mental

---

[9] There is nothing in *Edwards*, however, that calls into question the Supreme Court's earlier holding in *Faretta* that a defendant's lack of legal skill or courtroom effectiveness is no reason to force a lawyer upon him. *Faretta*, 422 U.S. at 834 ("[A]lthough [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (internal quotation marks omitted)).

27

capacity decisions, tailored to the individualized circumstances of a particular defendant.'" (App II 147).

Under *Edwards*, the district court must first determine whether a defendant suffers from a severe mental illness to the point where he is not competent to conduct trial proceedings by himself, and only then may it exercise discretion and decide whether to force counsel upon him. *Id.* Thus, *Edwards* does not impose a "new duty" on trial courts to measure competency under a heightened *"Edwards"* standard, but rather confers discretion on those best suited to make individualized determinations regarding a defendant's competency to proceed pro se. *United States v. Bernard*, 708 F. 3d 583, 590 n. 11 (4th Cir. 2013) (noting circuits that interpret *Edwards* to confer discretion rather than impose a duty).

### D.  Discussion

On remand, the trial court issued a "fine-tuned mental capacity decision that was tailored to the individualized circumstances of this particular defendant." *Edwards,* 554 U.S. at 177. Relying on multiple different evaluations by medical professionals, on the uncontested, in-court testimony of an expert witness, and on his own observations of

appellant's behavior and functioning in the courtroom, the trial judge determined that appellant, during his trial in 2008, did not suffer from a severe mental illness and was competent to represent himself at trial. Appellant cannot demonstrate that this finding was clearly erroneous, and the government thus proved, whether or not it bore the burden, that appellant was competent to represent himself.

### 1. The Trial Court's Competency Determination On Remand Was Not Clearly Erroneous Because Overwhelming Evidence Supported the Finding

The District Court based its finding of appellant's competence on an abundance of evidence, including multiple medical evaluations which all concluded that appellant was competent to represent himself at trial (App. II 184). Dr. Cunic's evaluation of March 4, 2008, concluded that appellant "did not evidence the symptoms of a severe mental disease or defect" during the time in question (App. II 212). She also found there was "no evidence of a severe mental illness or of an individual who was unable to function in a rational, reasonable manner" (*id.*). Even appellant's own expert at his trial in 2008 concluded that appellant "appeared competent enough to engage in his

Court proceedings" (App. II 232). Although Dr. Koshes made a provisional finding that appellant's behavior "suggested" bipolar disorder, later evaluators who spent more time with appellant rejected this diagnosis (App. II 226).

After remand by this Court in 2010, Dr. Williamson, on March 17, 2011, found appellant not to be suffering from a severe mental illness or defect rendering him unable to appreciate the nature and consequences of his criminal proceedings (App. II 226). Dr. Williamson also found that appellant seemed "invested in gamesmanship and appeared unmotivated for testing" (id.). Her report further found that appellant did not meet the diagnostic criteria for an Axis-I disorder, including Bipolar Disorder (id.). Dr. Pyant interviewed appellant four times and conducted his own evaluation in 2012 (App. II 94). Dr. Pyant was the only witness to testify at the competency hearing on October 12, 2012. He reviewed trial transcripts reflecting appellant's behavior and performance in the courtroom, and he reviewed medical evaluations by Drs. Cunic and Williamson (App. II 93-94). Dr. Pyant also testified as to his own interactions with and evaluations of appellant (App. II 112). His uncontested conclusion reaffirmed the finding of all the other

30

medical experts that appellant did not suffer from a severe mental illness at trial (App. II 96).

In particular, Dr. Pyant testified to the following: appellant was restricted in his communication during evaluations and did not elaborate on his answers (App. II 92); while appellant may have suffered from a personality disorder, this type of characterological disorder did not affect his competence at trial to waive counsel and to represent himself (App. II 99-100); appellant knew the purpose of the exam, was aware of its consequences, and seemed to be hoping to be found incompetent (App. II 103-104); appellant was a "very articulate individual" who functioned very well at the FMC in Butner (App. II 48-49); and, Dr. Pyant saw no evidence in the trial transcripts that appellant was psychotic, that he had a delusional disorder, or that he lacked intellectual functioning (App. II 113-114). Dr. Pyant also relied on the fact that appellant's own standby counsel at trial in 2008 believed appellant's behavior was a product of his personality as opposed to a major mental illness (App. II 106; App. I 303-304).[10]

---

[10] Appellant suggests that both Dr. Pyant and the trial judge ignored standby counsel's remark on April 2, 2008, that there was something
(continued . . . )

Additionally, the district court relied on its own observations of appellant at trial to support its conclusion that he was competent to represent himself. The district court noted that appellant had gone through multiple lawyers, all of whom had made requests to withdraw as a result of their inability to work with appellant (App. II 184); that appellant was of the view that he was "astute enough that he would be able to represent himself better than a lawyer would" (*id.*); and that appellant had devised a "fairly sophisticated scheme" to defraud others out of property (*id.*). These findings were supported by the district court's repeated, on-the-record observations in 2008 that appellant had initially refrained from raising a competency issue because he thought he was "slick enough to win this trial," and that he decided to change

_____

(. . . continued)
wrong with appellant and that appellant was nonsensical and irrational (Appellant's Brief at 33; App. II 71). But in the same hearing, standby counsel then added, "My gut feeling is he is competent enough to sink himself . . . under the law, he is entitled to put himself in a jail cell for as long as he wants" (App. I 404). As discussed *infra* Section I.D.4, irrationality alone does not lead to a finding of incompetence.

tactics after seeing the "mountain of evidence" against him and realizing that he was "going down" (App. I 305).[11]

Appellant can demonstrate no clear error in the trial court's reliance on its own first-hand observations. *See United States v. Battle*, 613 F. 3d 258, 263 (D.C. Cir. 2010) ("because 'evidence of a defendant's . . . demeanor at trial [is] relevant' in determining competency . . . the court was justified in relying on its own observations" to confirm the expert's opinion on competency.) In particular, the district court did not clearly err in determining that appellant's refusal to communicate and uncooperative nature were the product of a tactical decision to "game" the system as opposed to mental illness. *See United States v. Jones,* 642 F. 3d 1151, 1161-1162 (D.C. Cir. 2011) ("The relevant legal question is not whether appellant *will* 'assist properly in his defense,' but whether 'he is *able* to do' so"); *Battle*, 613 F. 3d at 263 ("uncooperativeness with one's counsel does not alone prove an inability to communicate.") This

---

[11] Similarly, the trial judge's rebuke of appellant for making "unintelligible" and "mumbo jumbo" arguments to the jury was not evidence of mental incompetence or an unfair trial, as appellant suggests (Appellant's Brief at 32), but merely an indication of appellant's incompetence as a lawyer. *See infra* Section I.D.4.

finding was supported by Dr. Cunic's conclusion in 2008 that appellant "has definite opinions about his personal and legal self-interest," and was unlikely to waver from them, not because of "severe mental disease or defect," but rather because this was how his personality functioned (App. II 211).

It is worth noting that on remand, the district court was not required to take any extra testimony or gather additional facts. As this Court observed in its earlier opinion, the District Court already had multiple reports from mental health professionals who had found appellant competent, as well as its own observations of defendant's behavior before and during trial, and thus was "not required" to take any additional evidence or allow additional briefing. *McKinney*, 373 Fed. Appx. at 75-76. Rather than simply re-issue a finding, however, the district court chose to allow extra briefing and take additional testimony, and it reaffirmed the same conclusion that has been reached by every professional who has examined appellant – that he was competent to represent himself at trial. There is thus no clearly erroneous finding. *United States v. Caldwell,* 543 F. 2d 1333, 1349 (D.C. Cir. 1974) ("A decision as to whether an accused is competent to stand

trial is a finding of fact which may not be set aside on appellate review unless it is clearly . . . erroneous").

### 2.    Appellant Erroneously Claims That The Trial Court Failed To Address *Edwards*

Appellant's claim that the district court failed to address the "*Edwards* issue" (Appellant's Brief at 19-20) focuses on a single sentence in the trial judge's findings[12] and ignores the larger context of the ruling. While the trial court may not have summed up its entire finding precisely in the single summary sentence quoted by appellant, the entirety of the trial judge's findings show that the issue of competence to self-represent, as opposed to merely the competence to stand trial or to waive counsel, was fully addressed.

Appellant ignores the fact that the trial court, following remand, invited further testimony and additional briefing on the specific issue of appellant's competency to represent himself at trial. Dr. Pyant

---

[12] The trial court concluded its ruling by stating, "it is my view that [appellant] did, in fact, have the ability to make an informed decision about his desire to represent himself and that he was, in fact, competent to make that decision and to waive his right to counsel, and accordingly I would have to deny the defendant's motion" (App. II 186).

explained that after remand in 2011, the FMC at Butner conducted a second evaluation of appellant because the first post-remand evaluation only addressed general competency to proceed and had not adequately addressed appellant's specific competency to represent himself at trial in 2008 (App. II 66). These circumstances show that the trial court was properly focused on the *Edwards* issue. Moreover, in his findings after remand, Judge Walton found that, "based on all of the examinations that have been done, [appellant] did not suffer from a severe mental illness" during his trial (App. II 185). This single statement was sufficient to fulfill this Court's directive on remand: to make a finding on whether or not appellant suffered from a "severe mental illness" that precluded his competence to proceed pro se. Furthermore, the trial judge's conclusion that appellant thought he was "astute" enough to self-represent and win at trial underscores the court's conclusion that appellant was, impliedly, mentally competent to represent himself.

### 3. Appellant Cannot Demonstrate Clear Error by Relying on Uncorroborated Statements and Evidence That Was Not Before the Trial Court

Appellant's claims that the district court made clearly erroneous findings, to the extent they are even properly considered by this Court, lack merit. First, appellant cannot demonstrate clear error by pointing to slivers of evidence in the record that appellant *may* have been suffering from mental issues "beyond personality disorder" at various times during and after trial (Appellant's Brief at 22-23). Appellant points to "Bureau of Prison records" indicating appellant was being treated with antipsychotic medications following trial. Yet these "records" consisted merely of notes from an "intake screening" meeting at the Fairton Federal Correctional Institution (App. II 132), documenting what appellant was verbally reporting to screeners when he arrived at prison. The claim that Dr. Francyne Anderson was treating appellant for depression with "mania features" (Appellant's Brief at 23) came solely from appellant's statements to Dr. Pyant and prison officials, and there was no report prepared by Dr. Anderson for

37

Dr. Pyant or for anyone else to review.[13] Thus there is no evidence other than appellant's own uncorroborated statements, made during a time when he was "hoping" to be found incompetent at the time of trial, to support a conclusion that he was taking antipsychotic medications during trial. Moreover, the provisional diagnosis of "probable" bipolar disorder during trial by Dr. Koshes was ultimately rejected by Dr. Cunic's analysis. None of this evidence reliably supports a conclusion that appellant suffered from a severe mental defect, and it cannot make the trial court's conclusion plainly wrong because there was overwhelming evidence, as described above, to support the court's findings of fact.

Next, appellant claims, without any support in the record, that the reports generated by Drs. Pyant, Williamson, and Cunic were "so superficial, they were meaningless" (Appellant's Brief at 23). But appellant's technical critique of the methodology underlying Dr. Pyant's expert conclusions relies on documents, clinical opinions, and scientific assertions that were not introduced during the competency hearing and

---

[13] Dr. Anderson's medical license was suspended on July 11, 2011 for medical malpractice (App. II 235).

38

are thus outside the record on appeal.[14] Appellant had no objection to qualifying Dr. Pyant as an expert in the diagnosis and treatment of mental illness (App. II 91). Dr. Pyant was not confronted with nor questioned about these criticisms. This Court is not an expert, and it certainly has "no fact-finding function. It cannot receive new evidence from the parties, determine where the truth actually lies, and base its decision on that determination." *Goland v. Central Intelligence Agency*, 607 F. 2d 339, 371 (D.C. Cir. 1978). Because "appellate review is ordinarily unaffected by matters not contained in the record," *id.* at 370, this Court is precluded from considering most of appellant's assertions of error in methodology, whether regarding the sufficiency of medical evaluations or the medical soundness of clinical diagnoses.

---

[14] For example, appellant cites to an article in *Behavioral Sciences and the Law* to argue that the evaluations performed at Butner fell short of a specific professional standard (Appellant's Brief at 24). The article, and its substance, were never presented to the trial court, nor was Dr. Pyant given the opportunity to address these criticisms. Appellant also cites to opinions from the Department of Health and Human Services ("HHS") claiming that any diagnosis in Axis I through IV can qualify as a "serious mental illness" (Appellant's Brief at 28) but does not establish that HHS is an accepted standard for mental health experts.

39

Furthermore, a trial judge certainly cannot make a clearly erroneous finding simply because it ignores conflicting evidence that it never saw.

Appellant's reliance on *United States v. Ecker*, 543 F. 2d 178, 181 (D.C. Cir. 1976) for the proposition that a personality disorder "can" qualify as a serious mental illness is unpersuasive. The defendant in *Ecker* was diagnosed with "sociopathic personality disturbance, sexual deviation (sadism)," which, on its face, is a different diagnosis than appellant's "antisocial personality disorder." There is no record evidence that either compares the two diagnoses, explains what a "sociopathic personality disturbance" is, or supports appellant's implied argument that they are similar conditions.

In any event, the arguments that the focus on DSM Axis-I diagnoses was improper (Appellant's Brief at 27), or that it was "unfounded" to conclude that personality disorder cannot qualify as a "serious mental illness" (Appellant's Brief at 29), would have been contradicted at the competency hearing by the much weightier evidence that is actually in the record. To the extent appellant argues that the competency evaluations performed were deficient because they were not "thorough" enough (Appellant's Brief at 23), Dr. Pyant maintained

throughout his testimony that he had enough information to make a conclusive finding and answer the court's question (App. II 70, 121). The fact remains that before remand, as this Court noted, the "expert's opinion was that appellant was competent and did not suffer from severe mental illness," and there was "no expert opinion to the contrary" (App. II 148). After the remand, Dr. Pyant's testimony that appellant was competent to represent himself was completely uncontroverted, and there is still no expert opinion to the contrary. Thus, Dr. Pyant's testimony and the conclusions reached by all of the other evaluating medical professionals still provide an ample basis for the trial court's findings. *Caldwell*, 543 F. 2d at 1349 ("The judge's decision . . . was . . . amply based on the evidence" and a factual finding of competency "may not be set aside on appellate review unless it is clearly arbitrary or erroneous.") Even if this Court were to consider the evidence of purportedly flawed methodology that was not presented to the trial judge, it could not conclude that the trial judge clearly erred by basing his conclusions on the expert testimony and evidence of record, and finding appellant competent to self-represent.

41

### 4.    Appellant's courtroom performance did not render his trial unfair

In asserting that the trial was fundamentally unfair as a result of appellant's "nonsensical" strategies, appellant seeks to invent a threshold standard for competency to self-represent that *Edwards* specifically refused to create. *See McKinney*, 373 Fed. Appx. at 75 ("The Court declined to adopt a 'specific standard' for mental competency to represent oneself at trial. Rather, the Court left it to the discretion of the trial judge. . .") On one hand, *Edwards* realized that self-representation may be inconsistent with a fair trial in "exceptional" circumstances, such as "where a defendant's lack of capacity threatens an improper conviction or sentence." *Edwards*, 554 U.S. 177. But the Supreme Court, uncertain of how a specific standard would function in practice, declined to articulate what rises to the level of incompetence to represent oneself, and felt confident that providing trial judges the authority to "deal appropriately" with pro se defendants ordered to undergo competency exams would "alleviate those fair trial concerns." *Id.* at 178-179.

Thus, the Supreme Court nowhere states that a "nonsensical" or irrational defense warrants a finding of incompetency. To the contrary,

42

courts have held that, even though a defense strategy may ultimately be a "travesty," a defendant's failure to effectively represent himself does not demonstrate that he was incompetent to do so under *Edwards*. *United States v. VanHoesen*, 450 Fed. Appx. 57, 62 (2nd Cir. 2011) ("'awful judgment' cannot justify denying him his right to proceed *pro se*"); *Bernard*, 708 F. 3d at 593 (bizarre or irrational behavior does not invariably compel a finding of incompetency, nor does an inability to make objections, question witnesses, or otherwise "think like a lawyer"). *See also Faretta,* 422 U.S. at 834 *supra* note 8.

Moreover, appellant's claim that he was denied a fair trial because of his courtroom performance is ultimately belied by what he was actually able to accomplish in court. Despite his lack of advocacy skills, appellant was still able to provide an opening statement, examine witnesses, and introduce evidence at trial. For example, he overcame a relevance objection by the government (1/22/08 Tr. 102-103) and moved documents into evidence with assistance from standby counsel (1/22/08 Tr. 123). Ultimately, he persuaded the jury to acquit him on one count of conspiracy, one count of engaging in an unlawful monetary transaction, and one count of first degree theft (4/17/08 Tr. 3-5).

43

Dr. Cunic's 2008 report summarized appellant's ability in the courtroom as follows:

> "[appellant] had an understanding of the basic legal actors and legal proceedings. . . [and] does know the basic rules and functions of the courtroom . . . Due to his tangential and exhaustive questioning, [appellant's] valid defense points are often lost due to his presentation style . . . in other words, [his] behavioral interactions with the Court may overshadow his actual knowledge of court actors and proceedings.
>
> [A] review of the court transcripts revealed that [appellant] was able to adequately follow direct examination of witnesses and address issues which could compromise his defense. For example, he was able to recall that a juror worked for a legal firm which may have been involved in a separate legal proceeding involving him, thus the juror may have developed a prior opinion of the defendant. Additionally he was able to anticipate when witnesses may defame his character or when witnesses may have contradicted their Grand Jury testimony. These are all behavioral examples of an individual who is attending and concentrating on details of the legal case being presented in court. (App. II 211.)

Furthermore, appellant suggests that the trial judge's on-the-record reservations about his ability to represent himself evidence an unfair trial (Appellant's Brief at 33), but the court was merely expressing concerns about appellant's legal ability, not his mental ability. *See Bernard*, 708 F. 3d at 591 (when a trial judge expressed second thoughts on the propriety of the decision to allow defendant to proceed pro se, it did not compel an appellate finding that self-

representation should have been denied under *Edwards*, as trial judge was "satisfied" that appellant was competent).

## II.    Appellant Was Not Denied Due Process as a Result of His Post-Remand Competency Hearing

Appellant argues that his Due Process rights were violated because a "retrospective" competency determination cannot reliably establish whether or not he was mentally competent to represent himself at trial (Appellant's Brief at 33-35). This claim lacks merit. The competency hearing before Judge Walton in 2012 did not violate appellant's Due Process rights because there were pre-existing competency determinations made at the time of trial, and a detailed record of evidence as to appellant's behavior during the time in question on which Dr. Pyant relied in reaching his post-remand conclusions.

Courts have allowed retrospective competency hearings when they are supported by contemporaneous evidence of the defendant's competency at the time in question. *Wheat v. Thigpen*, 793 F. 2d 621, 630-631 (5th Cir. 1986) (district court had access to expert opinions, medical evidence compiled before and after trial, trial transcript, and testimony of lay witnesses who observed the defendant at trial, and

45

could thus conduct "meaningful retrospective competency hearing.") *See also Maynard v. Boone*, 468 F. 3d 665, 675 (10th Cir. 2006) (retrospective hearing adequate eight years after trial because substantial contemporaneous evidence available); *Odle v. Woodford*, 238 F. 3d 1084, 1089-90 (9th Cir. 2001) (retrospective hearing adequate despite 18-year delay because medical records, psychological reports, and defense declarations describing defendant's behavior contemporaneous with initial trial); *Wilkins v. Bowersox*, 145 F. 3d 1006, 1014-15 (8th Cir. 1998) (retrospective hearing adequate because defendant's competence contemporaneously evaluated); *United States v. Mason*, 52 F. 3d 1286, 1293 (4th Cir. 1995) (retrospective hearing adequate because defendant's physicians formed opinion as to competence at time of trial); *Cremeans v. Chapleau*, 62 F. 3d 167, 170 (6th Cir. 1995) (retrospective hearing adequate nine years after trial because contemporaneous medical reports, testimony of judge and attorney present at original trial, and trial transcript available), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99 (1995).

Appellant's competency hearing is not properly characterized as "retrospective" because the basis for Dr. Pyant's opinions, and for the trial judge's findings, was not newly-created evidence of appellant's competency but rather the evidence of his behavior and mental state that was created and documented contemporaneously with the trial. As this Court noted in its order to remand, the trial court had a record before it – including the expert's opinion that appellant was competent and did not suffer from severe mental illness – that would enable it to make a "fine-tuned mental capacity decision" (App. II 148). Nor did this Court order supplementation of the existing record as to appellant's competency, but rather sought a clarification of the trial court's findings, and then allowed the trial court to proceed as it saw fit (*id.*). Thus, this Court was not demanding a "retrospective" evaluation, from scratch, of appellant's competency.

The examples cited by appellant of cases where courts have rejected retrospective competency determinations and required a new trial involve different factual circumstances, such as where a defendant had been completely denied a competency hearing at the time of his trial, or the contemporaneous competency determination was

47

incomplete and required further factual development. In *Dusky v. United States,* 362 U.S. 402 (1960), for example, the Supreme Court ordered a new trial because the record did not "sufficiently support the findings of competency to stand trial, for to support those findings . . . the district judge 'would need more information than this record presents." *Id.* at 403. Similarly, in *Pate v. Robinson*, 383 U.S. 375 (1966), the Supreme Court ordered a new trial because, despite limited evidence of the defendant's incompetence, "on the facts presented to the trial court [the evidence] could not properly have been deemed dispositive on the issue of Robinson's competence." *Id.* at 386. In *United States v. David*, 511 F.2d 355 (D.C. Cir. 1975), this Court remanded for a new trial because there was an "insufficient basis" in the record for determining the validity of the waiver in question, and only "further inquiry" would have enabled the trial court to rule on the issue. *David,* 511 F.2d at 362. The same lack of a reliable record drives the holdings in *Blunt v. United States*, 389 F. 2d 545, 549 (D.C. Cir. 1967) (no "fair and adequate competency proceeding" that allowed this Court to say "there was a properly informed judicial proceeding"), and *Heard v. United States*, 390 F.2d 866, 868 (D.C. Cir. 1968) ("Counsel elicited no

information about appellant's personality structure or mental condition, although hospital reports were available.")

These cases all stand in marked contrast to this one, where a thorough and extended competency evaluation spanning two months was performed immediately upon appellant's initial motion, in addition to a subsequent examination before trial performed by appellant's own expert. This record alone provided a sufficient basis for a competency determination four years later. The trial judge properly relied on evidence derived from and analyzing those initial findings, in addition to subsequent evaluations that confirmed the earlier findings, and doing so did not deprive appellant of due process.

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
VIRGINIA CHEATHAM
COLLEEN KENNEDY
Assistant United States Attorneys

_____/s/_____
GILEAD I. LIGHT, D.C. Bar #980839*
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829


* Application for admission to the District of Columbia Circuit pending.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(a)(7)(C) that this brief contains 9,753 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
GILEAD I. LIGHT
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Mary E. Davis, Esq., Davis & Davis, 1350 Connecticut Avenue, N.W., Suite 202, Washington, D.C. 20036, on this 28th day of May, 2013.

/s/
GILEAD I. LIGHT
Assistant United States Attorney

# ADDENDUM

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part III. Prisons and Prisoners
      Chapter 313. Offenders with Mental Disease or Defect

18 U.S.C.A. § 4241

§ 4241. Determination of mental competency to stand trial to undergo postrelease proceedings

Effective: July 27, 2006
Currentness

**(a) Motion to determine competency of defendant.**--At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

**(b) Psychiatric or psychological examination and report.**--Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247 (b) and (c).

**(c) Hearing.**--The hearing shall be conducted pursuant to the provisions of section 4247(d).

**(d) Determination and disposition.**--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--

  **(1)** for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

  **(2)** for an additional reasonable period of time until--

    **(A)** his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

    **(B)** the pending charges against him are disposed of according to law;

      whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

**(e) Discharge.**--When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the defendant's counsel and to the attorney for the Government. The court shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings. Upon discharge, the defendant is subject to the provisions of chapters 207 and 227.

**(f) Admissibility of finding of competency.**--A finding by the court that the defendant is mentally competent to stand trial shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be admissible as evidence in a trial for the offense charged.

## Credits

(June 25, 1948, c. 645, 62 Stat. 855; Oct. 12, 1984, Pub.L. 98-473, Title II, § 403(a), 98 Stat. 2057; July 27, 2006, Pub.L. 109-248, Title III, § 302(2), 120 Stat. 619.)

Notes of Decisions (919)

18 U.S.C.A. § 4241, 18 USCA § 4241
Current through P.L. 113-9 (excluding P.L. 113-4) approved 5-1-13

---

End of Document © 2013 Thomson Reuters. No claim to original U.S. Government Works.